IN RE: FORECLOSURE OF DEED OF TRUST RECORDED IN BOOK 911, AT PAGE 512, CATAWBA COUNTY REGISTRY

No. 74

(Filed 8 July 1981)

1. **Mortgages and Deeds of Trust § 33.1; Husband and Wife § 15— entirety property—foreclosure sale—surplus proceeds held as tenants in common**

Surplus funds generated by a foreclosure sale of real property pursuant to a power of sale in a deed of trust on entirety property are not held constructively as entirety property but are held by the husband and wife as tenants in common, since the sale at foreclosure is not an involuntary conversion.

2. **Mortgages and Deeds of Trust § 33.1; Husband and Wife § 16; Taxation § 34— foreclosure sale of entirety property—surplus proceeds—priority of judgment and tax liens**

Where a federal tax lien was filed against the husband individually on 9 April 1976, a corporation's judgment lien against the husband and wife was filed 13 May 1976, a second corporation's judgment lien was filed against the husband and wife on 6 July 1976, a foreclosure sale of realty owned by the

husband and wife as tenants by the entirety was thereafter held pursuant to a power of sale in a deed of trust on the property, and surplus funds from the sale, which were held by the husband and wife as tenants in common, were paid to the clerk of court, the two judgment liens of the corporations attached to the entirety property and continued in the funds generated by the foreclosure sale, but the federal tax lien did not attach to the entirety property and gave the Internal Revenue Service no right to recovery until the surplus proceeds were paid over to the clerk of court; therefore, since the federal tax lien was the last to attach to any interest in the surplus proceeds, it was junior to the judgment liens of the two corporations.

APPEAL of right by the United States Government, through its agent Internal Revenue Service (hereinafter I.R.S.), from a decision of the Court of Appeals (*Morris, C. J., Wells, J.*, concurring; *Vaughn, J.*, dissenting) reported at 50 N.C. App. 69, 272 S.E. 2d 893 (1980), affirming the judgment of *Collier, J.*, entered 20 December 1979 in Superior Court, CATAWBA County.

*John F. Murray, Acting Assistant Attorney General; Michael L. Paup, Daniel F. Ross and Donald B. Susswein, Attorneys, Tax Division, Department of Justice, Washington, D.C., for appellant Internal Revenue Service.*

*E. James Moore, Attorney for appellee Northwestern Factors, Inc.*

MEYER, Justice.

This action was brought to determine the proper disposition of surplus proceeds generated by the foreclosure sale of certain real property. The property was owned by Mr. and Mrs. Frank Cline but was foreclosed in accordance with a power of sale contained in the deed of trust on the property. The property sold for $30,000.00 at foreclosure. After payment of the note secured by the deed of trust and expenses incurred in connection with the sale of the property, the substituted trustee deposited the remaining funds, $16,430.02, with the Clerk of Superior Court, Catawba County, in accordance with G.S. 45-21-31(b).

This action was originally instituted by North Carolina National Bank, holder of a promissory note secured by a second deed of trust on the property. North Carolina National Bank and various other parties, including petitioner-I.R.S., sought to satisfy a total of eight judgments and liens from the surplus fund.

Judge Collier filed an initial judgment in this matter on 23 October 1979, but that judgment was set aside by the court on motion of the I.R.S. on the grounds that the I.R.S. had not received proper notice of the hearing.

On 21 November 1979, prior to the second hearing in this matter, which is the subject of this appeal, the I.R.S. stipulated that it did not object to the payment of those liens recorded prior to the entry of its lien. Rather, the objection of the I.R.S. was to the payment of two liens recorded after the entry of the I.R.S. lien. Those two liens, held by Northwestern Factors, Inc. and Conover Foam and Fiber Corporation, were given priority because they were incurred by the Clines as husband and wife. The tax lien upon which petitioner seeks to recover was filed on 9 April 1976, but it is a lien against only Frank S. Cline individually.

The matter was heard by Judge Collier on 21 November 1979. On 20 December 1979 Judge Collier entered an order which contained the following conclusion of law:

The property in question being entirety property prior to the foreclosure, the funds received from such foreclosure stand in the stead of the entirety property and retain the same characteristics.

The effect of Judge Collier's determination that the foreclosure proceeds retained the characteristics of entirety property was that the two liens held by the corporations, although junior in time, were superior to the I.R.S. lien, because those two liens were against husband and wife and thus attached to the entirety property.

The Court of Appeals affirmed Judge Collier's determination that the surplus proceeds retained the characteristics of entirety property. Appeal as of right to this Court by the I.R.S. followed.

[1] As the Court of Appeals recognized, this case presents a question of first impression in this State: Are surplus funds generated by a foreclosure sale of real property pursuant to a power of sale in a deed of trust on entirety property held constructively as entirety property, or is the tenancy by the entirety terminated and the funds held as tenants in common? The majority in the Court of Appeals held that such funds retain their status as entirety property. We disagree. We find no compelling reason

to extend the reach of a common law fiction, the concept of entirety property, to include funds which, even at common law, could only be deemed personalty. In North Carolina, as a general rule, the estate by the entirety exists only in realty.[1] *Bowling v. Bowling*, 243 N.C. 515, 91 S.E. 2d 176 (1956); *Wilson v. Ervin*, 227 N.C. 396, 42 S.E. 2d 468 (1947). North Carolina is one of a distinct minority of states which in general recognizes a tenancy by the entirety only in realty. *See* Annot., 64 A.L.R. 2d 8 (1959). Accordingly, we hold that the surplus proceeds of foreclosure at issue in this appeal are held by husband and wife as tenants in common.

Prior decisions of this Court establish the general rule that when husband and wife voluntarily sell and convey real property they own as tenants by the entirety, the proceeds of the sale become personal property, held as tenants in common. *Shores v. Rabon*, 251 N.C. 790, 112 S.E. 2d 556 (1960); *Wilson v. Ervin*, 227 N.C. 396, 42 S.E. 2d 468 (1947). An exception to this general rule is found in cases where the conversion of the entirety property is involuntary on the part of the husband and wife. In cases where the conversion is involuntary, such as where the State appropriates land under its power of eminent domain, this Court has held that "such involuntary transfer of title does not destroy or dissolve the estate by the entirety . . . the compensation paid by the [Highway] Commission therefor has the status of real property owned by husband and wife as tenants by the entirety." *Highway Commission v. Myers*, 270 N.C. 258, 262; 154 S.E. 2d 87, 90 (1967).

Cognizant of both the general rule and the exception, the majority in the Court of Appeals concluded that the forced sale of property at foreclosure was, in effect, an involuntary transfer. Thus, citing the language of *Myers* quoted above, the Court of Appeals concluded that the surplus proceeds remained entirety property.

There is substantial authority from other jurisdictions that a sale at foreclosure is not an involuntary conversion. Rather, as

---

1. We note in passing that the current session of the General Assembly has, by the enactment of an amendment to Chapter 41 of the General Statutes, created a tenancy by the entirety in mobile homes without regard to their classification as either real or personal property. House Bill 583, ratified 5 June 1981, to be codified as G.S. 41-2.5.

Judge Vaughn recognized in his dissent, a number of voluntary choices are made by parties who sign a deed of trust conveying a power of sale. In *Nat. Bank & Trust v. Rickard,* 57 App. Div. 2d 156, 393 N.Y.S. 2d 801 (1977), the court answered this question quite succinctly: "[T]he giving of the mortgage, the vehicle which authorized the sale, was a voluntary act of the husband and wife and the authorized sale merely an incident in producing the fund." 57 App. Div. 2d at 158, 393 N.Y.S. 2d at 802. We agree with Judge Vaughn that the numerous voluntary decisions made by the Clines in buying realty and subjecting it to a deed of trust do not provide the proper factual background for determining that sale at foreclosure was involuntary in the true sense of that word as used in this context.

Since the foreclosure sale of the realty here cannot be considered involuntary, surplus funds so created are not held by the entirety. Perhaps the leading case so holding is *Franklin Square Nat. Bank v. Schiller,* 119 N.Y.S. 2d 291, (Sup. Ct. 1950). In *Schiller,* husband and wife, owners by the entirety of the real property in question, filed separate claims seeking to recover surplus proceeds generated by sale at foreclosure. Plaintiff wife urged that the court hold the surplus funds as tenancy in common property; defendant husband argued that the funds should retain the special characteristics of entirety property. The New York Supreme Court adopted the opinion of the referee in the matter, which said in part:

> The reason for holding that the parties are tenants in common is that there can be no tenancy by the entirety of personal property. Such a tenancy is a common-law one and can be only in real estate. *Matter of Albrecht,* 136 N.Y. 91, 32 N.E. 632, 18 L.R.A. 329; *Matter of McKelway's Estate,* 221 N.Y. 15, 116 N.E. 348, L.R.A. 1917E, 1143; *Matter of Blumenthal's Estate,* 236 N.Y. 448, 141 N.E. 911, 30 A.L.R. 901. In these cases the tenancy by the entirety was held terminated because of a voluntary sale of the real property and conversion of the proceeds of sale to personalty. The rule should be the same where the conversion came about through foreclosure of a mortgage and the sale of the property at public auction to an outsider. The surplus proceeds of the sale are personal property.

119 N.Y.S. 2d at 294.

In *Hawthorne v. Hawthorne*, 13 N.Y. 2d 82, 242 N.Y.S. 2d 50 (1953), the Court of Appeals of New York expressly approved the *Schiller* decision, citing it as controlling authority on the question of whether surplus monies generated at foreclosure could be held by the entirety. This Court, in turn, recently cited with approval the reasoning and result in *Hawthorne. See Lovell v. Rowan Mut. Fire Ins. Co.*, 302 N.C. 150, 274 S.E. 2d 170 (1981). In *Lovell* we held that proceeds of a fire insurance policy covering entirety property were not constructively entirety property where one spouse intentionally burned the dwelling involved. Just as in *Lovell* we reufsed to extend the concept of entirety property, so do we here. Accordingly, we conclude that the surplus proceeds of the foreclosure sale are held by Frank S. and Sally Cline as tenants in common.

[2] We turn now to the question of the priority of the competing liens of the I.R.S. and the two corporations. By affirming the trial court, the Court of Appeals did not reach the question of priority of the liens. On the facts of the record before us, our determination that the surplus proceeds are held by husband and wife as tenants in common is not dispositive on the question of priority.

Facts relevant to the question of priority are as follows: (1) the tax lien of the I.R.S. against Frank Cline individually was filed 9 April 1976; (2) the judgment lien of Northwestern Factors against Frank S. and Sally Cline was filed 13 May 1976; (3) the judgment lien of Conover Foam and Fiber Corporation against Frank S. and Sally Cline was filed 6 July 1976.

The priority of liens generally depends upon the time that they attach to the property involved. 51 Am. Jur. 2d Liens § 52 (1970). A lien of judgment, including a tax lien, effective against only one spouse does not attach to real property held by husband and wife by the entireties. *Duplin County v. Jones*, 267 N.C. 68, 147 S.E. 2d 603 (1966); *Air Conditioning Co. v. Douglas*, 241 N.C. 170, 84 S.E. 2d 828 (1954); *Winchester-Simmons Co. v. Cutler*, 199 N.C. 709, 155 S.E. 611 (1930); *Davis v. Bass*, 188 N.C. 200, 124 S.E. 566 (1924); Webster, Real Estate Law in North Carolina § 366. Thus, the tax lien upon which petitioner seeks to recover could not attach to any interest in the entirety property until the property was converted into another form of estate at the time of final sale under foreclosure. *Porter v. Bank*, 251 N.C. 573, 111 S.E.

In re Foreclosure of Deed of Trust

2d 904 (1960). After the sale was completed, the I.R.S. properly presented its claim in the surplus proceeds to the clerk of court, as provided for in G.S. 45-21.32. That statute outlines the procedure to be followed by parties claiming an interest in the surplus proceeds.

Conversely, the judgment liens held by Northwestern Factors and Conover Foam properly attached to the entirety property on 13 May 1976 and 6 July 1976 respectively. Both of those debts were incurred by husband and wife, and both judgments were properly entered as liens on the entirety property. Therefore, even though we agree with petitioner that surplus funds generated at a sale under foreclosure of entirety property are held by husband and wife as tenants in common, we further conclude that petitioner's federal tax lien gave petitioner no right to recovery until the surplus proceeds were paid over to the clerk of court.

Once properly attached to the underlying property, the liens of the corporations continued in the proceeds generated by sale at foreclosure. As noted in *In re Castillian Apartments*, "Surplus money arising upon a sale of land under a decree of foreclosure stands in the place of the land itself in respect to liens thereon or vested rights therein." 281 N.C. 709, 190 S.E. 2d 161 (1972). Since the federal tax lien was the last to attach to any interest in the surplus proceeds, it is junior to the liens of the corporate appellees.

The result is that the decision of the Court of Appeals is reversed and the cause is remanded to the Court of Appeals to be further remanded to Superior Court, Catawba County for the entry of an order not inconsistent with the result reached in this opinion.

Reversed and remanded.