**UNITED STATES of America, Plaintiff,**

v.

**Eunice W. MAUNEY, Defendant.**

**No. ST–C–86–41.**

United States District Court,
W.D. North Carolina,
Statesville Division.

Sept. 3, 1986.

Charles R. Brewer, U.S. Atty., Asheville, N.C., Betsy E. Burke, Atty., Tax Div., Department of Justice, Washington, D.C., for plaintiff.

Lacy H. Thornburg, Atty. Gen., William F. O'Connell, Sr. Deputy, Reginald L. Watkins, Sp. Deputy, Douglas A. Johnston, Asst. Atty. Gen., North Carolina Dept. of Justice, Raleigh, N.C., for defendant.

WOODROW WILSON JONES, District Judge.

The United States of America brought this action pursuant to Section 7401 of the Internal Revenue Code of 1954, (26 U.S.C.A. Section 7401), against the Defendant, Eunice Mauney, Clerk of the Superior Court of Catawba County, North Carolina, to enforce an administrative levy served in connection with the collection of federal taxes. A Notice of Levy was served under the provisions of Section 6331 of the Code, (26 U.S.C.A. Section 6331), on February 2, 1984 demanding certain funds held by the Defendant as Clerk of the Superior Court in which delinquent taxpayer, Cornelia Beard, had an interest. The Defendant refused to comply with the levy and the United States seeks an order of this Court directing the Defendant to turn over $1,462.49, plus interest accruals since the date of the levy.

The Attorney-General of North Carolina answered for the Defendant and he and the attorney for the Government have filed cross motions for summary judgment. These motions were heard by this Court in Statesville, North Carolina on August 20, 1986. The attorneys for the parties agreed that the facts as set forth in their briefs are correct and there is no dispute as to any material fact. The Court therefore concludes, as conceded by the attorneys, that the matter is ripe for summary judgment.

The facts necessary for the resolution of this controversy are brief and not in dispute. The Internal Revenue Service made an assessment against Cornelia Beard on May 10, 1982, for a penalty incurred under Code Section 6672, (26 U.S.C.A. Section 6672), as a responsible person of House of Steven, Inc., who willfully failed to collect, truthfully account for and pay over to the United States, withholding taxes of certain employees of House of Steven, Inc., for the fourth quarter of 1979, and for the first and second quarters of 1980, and the second quarter of 1981 in the amount of $27,-225.27, or who attempted in some other manner to evade or defeat such taxes or the payment thereof. A Notice of Federal Tax Lien was filed thereafter on June 16, 1982.

In its efforts to collect these unpaid taxes, the Internal Revenue Service discovered funds under the control of the Defendant as Clerk of the Superior Court to which the taxpayer had a claim or interest. These funds were held by the Clerk as surplus proceeds from the foreclosure of real estate which taxpayer, Cornelia Beard, and her husband had owned jointly as tenants by the entirety subject to a deed of trust.

On February 2, 1984 the Internal Revenue Service served an administrative notice upon the Defendant demanding that the surplus proceeds of the taxpayer, Cornelia Beard, be turned over to it to be applied to her tax liability. At the time of the service of the notice the Defendant as Clerk of the Superior Court held $2,924.97 in surplus funds from the foreclosure proceeding.

The Government contends that the taxpayer has a one-half interest in such funds by virtue of her ownership as a tenant by the entirety in the real property foreclosed, and accordingly, the Defendant is required by law to turn over to the Internal Revenue Service one-half of those proceeds, to-wit $1,462.50.

The Defendant has failed to surrender the funds in question contending that under North Carolina law the appropriate forum in which competing claims to surplus funds may be resolved is a special proceeding before the Clerk. She contends there may be other claimants of the funds and the United States must institute a special proceeding in state court against the taxpayer and all other lienholders or claimants under North Carolina General Statutes 1–393 and 45–21.32 and let the state court determine who is entitled to the funds under state law.

The Defendant further contends that the right to levy should not be directly enforced against the surplus fund while it is still in the possession and control of the state court and until the Clerk determines who is entitled to the surplus funds this Court should abstain from intervening. She contends that this is a matter which properly comes within the abstention principles of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 17 L.Ed.2d 669 (1971), and that the principles of equity, comity, and federalism enunciated in *Younger* and other later decisions require a dismissal.

The facts of this case and the contentions of the parties require the Court to decide the following questions of law:

1. Whether the federal income tax assessment on May 10, 1982 against Cornelia Beard created a federal tax lien in favor of the United States which attached to the funds held by the Defendant as Clerk of the Superior Court for Catawba County, North Carolina.

2. Whether the Notice of Levy constructively and legally seized taxpayer's property or rights to property on behalf of the United States.

3. Whether the United States is required to commence a special proceeding in state court in order to recover the funds of the taxpayer.

■ Title 26 U.S.C.A. Section 6321 provides that, upon failure of a taxpayer to pay taxes due after demand, a lien in favor of the United States arises in the amount of unpaid taxes together with interest, additions, penalties and cost. This lien attaches to "all property and rights to property, whether real or personal," belonging to the taxpayer and property acquired by

taxpayer after the assessment. The tax lien in question was perfected under Section 6623 when a Notice of Federal Tax Lien was filed against the taxpayer Cornelia Beard. This Notice of a Federal Tax Lien encumbered the taxpayer's one-half interest as a tenant by the entirety in the real property which was subsequently foreclosed by the party holding the deed of trust. Under the holding of *In Re Foreclosure of Deed of Trust*, 303 N.C. 514, 279 S.E.2d 566 (1981), the surplus funds generated by a foreclosure of real property pursuant to a power of sale in a deed of trust on entirety property are not held constructively as entirety property but are held by the husband and wife as tenants in common, since the sale at foreclosure is not an involuntary conversion. The Defendant, therefore, held funds of the taxpayer as surplus from a foreclosure proceeding which funds are subject to the tax lien of the United States.

■ A federal tax lien is not self-executing. The IRS must enforce collection of unpaid taxes by one of two methods. One method is the institution of a plenary lien-foreclosure action against any property in which the delinquent taxpayer has an interest. Any other persons having an interest in the property involved must also be made parties to the action. The other method is the administrative levy, a provisional remedy which ordinarily will not require judicial intervention. *United States v. National Bank of Commerce*, — U.S. —, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985).

In the situation where a taxpayer's property is held by another, and the IRS chooses to proceed by administrative levy a notice of levy upon the custodian is customarily served pursuant to Section 6332(a). This notice gives the IRS the right to all property levied upon, *United States v. Eiland*, 223 F.2d 118, 121 (4th Cir.1955), and creates a custodial relationship between the person holding the property and the IRS so that the property comes into the constructive possession of the Government. *Phelps v. United States*, 421 U.S. 330, 334, 95 S.Ct. 1728, 1731, 44 L.Ed.2d 201 (1975). If

the custodian honors the levy, he is "discharged from any obligation or liability to the delinquent taxpayer with respect to such property or rights to property arising from such surrender or payment." Section 6332(d). If, on the other hand, the custodian refuses to honor a levy, he incurs liability to the Government for his refusal. Section 6332(c)(1).

■ The administrative levy, being a provisional remedy, does not finally determine the Government's superior rights to the seized property. Its purpose is to provide for the prompt and relatively inexpensive collection of federal revenues and to prevent the loss or diversion of assets of the delinquent taxpayer while competing claims to such assets are being resolved. *National Bank of Commerce, supra*. The constitutionality of the administrative levy has been established. *Id., citing, Phillips v. Commissioner*, 283 U.S. 589, 595, 51 S.Ct. 608, 611, 75 L.Ed. 1289 (1931).

■ A careful reading of the statutes and cases reveal without question that the notice of levy when served upon the Defendant transferred the constructive possession of the funds to the United States.

*National Bank of Commerce, supra*, involved two joint accounts in a bank in Arkansas. The issue was whether the IRS had the right to levy on those accounts for delinquent federal income taxes owed by only one of the persons in whose names the accounts stood in order that the Government might obtain provisional control over the accounts.

The Court held that a bank served with an IRS notice of levy has only two defenses for a failure to comply with the demand. One defense is that the bank in the words of Section 6332(a), is neither "in possession of" nor "obligated with respect to" property or "rights to property belonging to" the delinquent taxpayer. The other defense, again with reference to Section 6332(a), is that the taxpayer's property is "subject to a prior judicial attachment or execution."

There is no contention here that the funds in the hands of the Defendant are

subject to a prior judicial attachment or execution. Nor is there any doubt that the Defendant is "obligated with respect to" the funds of the taxpayer. The funds do not belong to the Defendant but are held by her for the taxpayer or other lienholders or claimants. She says these rights must be determined in state court by a special proceeding and under state law.

*National Bank of Commerce, supra,* reaffirmed the settled principle that in the application of a federal revenue act state law determines the nature of the legal interest a taxpayer has in property. This is so because the federal statute "creates no property rights but merely attaches consequences, federally defined, to rights created under state law." *United States v. Bess,* 357 U.S. 51, 55, 78 S.Ct. 1054, 1057, 2 L.Ed.2d 1153 (1958). *Bess* further holds that when it has been determined that state law creates sufficient interests in the taxpayer to satisfy the requirements of the federal statute, state law is no longer operative, and the tax consequences thereafter are dictated by federal law.

In the case at bar the state law provides that the surplus funds from the foreclosure of a deed of trust on real property held by the entirety is vested in the husband and wife as tenants in common. *In Re Foreclosure of Deed of Trust, supra.* Therefore, under state law one half of the surplus funds from the foreclosure belong to the wife, the taxpayer, and are subject to the administrative levy.

The contention of the Defendant that the rights of other claimants or lienholders must be determined in a special proceeding in state court is determined by *National Bank of Commerce, supra.* The Court pointed out that Congress set up a statutory scheme to protect such rights. Any other claimant asserting rights in the taxpayer's funds may bring a civil action against the United States to have the property returned, or such claimant may seek return of the property administratively. *See,* Treas.Reg. § 301.6343–1(b)(2), 26 CFR § 301.6343–1(b)(2) (1984). In balancing the interest of the Government in the speedy collection of taxes against the interests of any claimants to the property, Congress struck the balance by providing for an immediate administrative levy by the IRS, with other claims to the property to be resolved by post-seizure administrative or judicial proceeding. *National Bank of Commerce, supra,* 105 S.Ct. at 2929.

The Court therefore finds and concludes that the United States is not required under the law to commence a special proceeding in state court in order to determine the ownership of the surplus funds or to recover the funds belonging to the taxpayer.

The Defendant's claim that this Court lacks in personam jurisdiction of the Defendant is without merit. In *Sims v. United States,* 359 U.S. 108, 79 S.Ct. 641, 3 L.Ed.2d 667 (1959), the Supreme Court affirmed a personal judgment against a state officer for failing to honor the notice of a federal levy and to pay over funds pursuant to said levy. This Court has jurisdiction of this cause and of the Defendant under the provisions of 28 U.S.C.A. Sections 1340 and 1345 and 26 U.S.C.A. Section 7402(a).

The contention of the Defendant that this Court should abstain from intervening in this matter is without merit. This case involves the important matter of federal revenues and is not a matter within the abstention principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

The Court finds and concludes that the federal tax assessment of May 10, 1982, against Cornelia Beard created a federal lien in favor of the United States which attached to the funds which later came into the hands of the Defendant as Clerk of the Superior Court of Catawba County, North Carolina, and that the Notice of Levy served on the Defendant constructively and legally seized on behalf of the United States the taxpayer's share of the surplus funds. The defenses set forth by the Defendant are without merit and the United States is entitled to payment of one half of the surplus funds and one half of any accrued interest on said funds. A judg-

ment will be entered accordingly directing the Defendant to pay said funds over to the United States.